BRANDAID MARKETING CORPORA-
TION, Plaintiff–Counter–Defendant–
Appellant–Cross–Appellee,

v.

Steven S. BISS, Defendant–Third–Par-
ty–Plaintiff–Counter–Claimant–
Appellee–Cross–Appellant.

Cyberian Enterprises, Ltd., Defendant–
Third–Party–Plaintiff–Counter–
Claimant–Appellee,

Peter Markus and Paul Sloan,
Third–Party–Defendants.

Docket Nos. 05–5243–CV(L),
05–5309–CV(XAP).

United States Court of Appeals,
Second Circuit.

Argued: May 19, 2006.

Decided: Aug. 31, 2006.

Paul W. Siegert, New York, NY, for Plaintiff–Counter–Defendant–Appellant–Cross–Appellee.

Steven S. Biss, Richmond, VA, pro se, for Defendant–Third–Party–Plaintiff-Counter-Claimant-Appellee-Cross-Appellant.

Before POOLER and MINER, Circuit Judges, and RAKOFF, District Judge.*

RAKOFF, District Judge.

Plaintiff BrandAid Marketing Corporation ("BrandAid"), which at the time this action commenced was a publicly traded corporation organized under Delaware law, appeals the dismissal of its suit against Cyberian Enterprises, Ltd. ("Cyberian"), a Hong Kong company, and against Cyberian's attorney, Steven S. Biss, Esq. ("Biss"), who represented Cyberian during its negotiations with BrandAid. Defendant Biss, for his part, cross-appeals the district court's denial of his motion for summary judgment.[1]

The pertinent facts, as found by the district court, are as follows. On September 30, 2002, BrandAid authorized the issuance of 80 million common shares of its company stock, and in November 23, 2002, Cyberian contacted BrandAid to express interest in purchasing 23,500,000 shares of BrandAid for $21 million. At the time, BrandAid was experiencing financial difficulties and needed the cash to pay outstanding debts to its vendors. Cyberian, with Biss' connivance, falsely assured BrandAid that it had sufficient cash to finance the investment, that the source of the cash was investments "currently placed in New York at one of the largest USA banks," and that it had no plans to change BrandAid's board of directors or management. BrandAid, for its part, failed to disclose the full extent of its actual and contingent liabilities and ongoing problems (such as lawsuits pending against it), although its various SEC filings disclosed very serious liabilities, few assets, and little cash. In addition, BrandAid falsely represented to Cyberian that it was in good standing in Delaware (whereas its corporate charter had been voided for non-payment of corporate franchise taxes).

On November 14, 2002, BrandAid and Cyberian entered into a Subscription Agreement to consummate the deal, and on December 9, 2002, BrandAid forwarded to Biss a certificate for 23,500,000 shares of its common stock to be held in escrow until Cyberian paid for the shares. The shares were to be released only if the money cleared; otherwise, the certificate was to be returned via overnight priority mail. Cyberian, however, remained unable to procure the funds necessary to close the deal.

Finally, in April 2003, after repeatedly assuring BrandAid that it had the necessary funds and receiving several extensions of the date by which the deal was to be closed, Cyberian acknowledged it did not have the necessary funds, and proposed instead a cashless exchange in which Cyberian would pay for the shares with Chinese real estate. When BrandAid rejected this proposal, Biss, on behalf of

---

* The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

1. Although Cyberian was properly served with the notice of this appeal, it failed to file a brief contesting the appeal. After being contacted by the Clerk's office regarding Cyberian's failure to file a brief, counsel for Cyberian orally advised that it was adopting the arguments presented by co-appellee Biss. Given the outcome of this appeal, *infra*, we have no occasion to consider whether this was adequate.

Cyberian, sought to effect a "cashless takeover" of BrandAid by voting the still-unpurchased escrowed shares.[2] Further, on May 23, Biss advised both Paul Sloan (Brandaid's Chair) and the SEC that the officers and directors of BrandAid had been dismissed and that a new slate of directors would be appointed. With the assistance of a new BrandAid Chair, Cyberian then sought to consummate the cashless exchange and file the appropriate forms with the SEC.

■] In response, BrandAid commenced this suit against Cyberian and Biss, alleging, *inter alia,* breach of contract, fraud, and violations of the federal securities laws. Cyberian, in turn, counter-claimed (and brought third-party claims against related parties) for fraud, tortious interference with contract, and breach of an implied covenant of good faith and fair dealing. After some discovery, Cyberian and Biss moved for summary judgment in their favor, but the district court reserved decision and never decided the motion. Rather, the district court held a three-day bench trial, following which the district court dismissed all the claims against all of the parties pursuant to the doctrine of *in pari delicto* (literally "in equal fault").[3] Specifically, the district court determined that, even though Cyberian and Biss repeatedly promised to pay BrandAid funds they did not have, fraudulently attempted to take over BrandAid without any investment, and voted or threatened to vote escrowed BrandAid shares they did not own, BrandAid, for its part, "tried to de-

ceive Cyberian into investing in a company that was practically worthless." We review the district court's findings of fact for clear error and its conclusions of law *de novo.* *See, e.g., Rose v. AmSouth Bank,* 391 F.3d 63, 65 (2d Cir.2004).

■] The doctrine of *in pari delicto* means more than just "two wrongs make a right." To begin with, application of the doctrine requires that the plaintiff be "an active, voluntary participant in the unlawful activity that is the subject of the suit." *Pinter v. Dahl,* 486 U.S. 622, 636, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). Whatever misrepresentations BrandAid may have made about its condition, there is no suggestion that this in any way caused Cyberian to use fraud and other unlawful conduct to attempt its purchase and hostile takeover. But it is this fraud and other chicanery on which BrandAid's claims are premised.

■] Another requirement for invocation of the doctrine of in *pari delicto* is that the plaintiff's wrongdoing be at least substantially equal to that of the defendant. See *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310–11, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985); *Peltz v. SHB Commodities Inc.,* 115 F.3d 1082, 1090 (2d Cir.1997); *Ross v. Bolton,* 904 F.2d 819, 824–25 (2d Cir.1990). Here, the district court appears to have overlooked that BrandAid, while it may not have adequately disclosed its financial and legal difficulties during its direct negotiations with Cyberian, did largely disclose them in its contemporaneous SEC filings,

---

**2.** A t oral argument, Biss maintained that he did not in fact vote the escrowed shares, but effected, or sought to effect, the takeover by voting shares belonging to other persons whose proxies he had solicited. However, the district court expressly found that on April 16, 2003, "Biss notified [BrandAid] that Cyberian intended to vote the escrowed shares in favor of the [proposed takeover] even though Cyberian had not paid for those shares."

**3.** Even if Cyberian can be said to have joined in Biss' argument on this appeal, see note 1, *supra,* since only Cyberian brought claims against third-parties Cyberian cannot be said to have appealed the dismissal of those third-party claims.

which Cyberian could easily have checked. Thus, as a practical matter, BrandAid's omissions pale in comparison to defendants' fraudulent scheme.[4] Indeed, if it were otherwise, swindlers who regularly prey on victims they know to be financially strapped could readily avoid liability on the pretense that they would never have defrauded a given victim if that victim had completely disclosed just how bad its condition was.

Because, therefore, plaintiff's wrongdoing was far less culpable than defendants' and because, in any event, plaintiff's wrongdoing was not in any meaningful respect the cause of defendants' fraud and misconduct, the doctrine of in *pari delicto* is not here applicable. Accordingly, the judgment of the district court is vacated, and the case remanded for further proceedings consistent with this opinion.[5]

**Community Service Society of New York, Inc., et al., Plaintiff–Cross–Appellants,**

**Carmen Velazquez, et al., Plaintiffs,**

v.

**LEGAL SERVICES CORPORATION, Defendant–Appellant–Cross–Appellee,**

**United States of America, Intervenor–Defendant–Appellant–Cross–Appellee.**

**Docket Nos. 05–0340–cv (L), 05–0360–cv (CON), 05–0787–cv (CON), 05–0792–cv (CON), 05–0925–cv (XAP).**

United States Court of Appeals, Second Circuit.

Argued Nov. 2, 2005.

Decided Sept. 8, 2006.

---

4. Because we find that, as a matter of law, plaintiff does not "bear at least substantially equal responsibility for the violations he seeks to redress," *Eichler v. Berner*, 472 U.S. 299, 310–11, 105 S.Ct. 2622, 86 L.Ed.2d 215, we need not reach the question of whether "preclusion of this suit would ... significantly interfere with the effective enforcement of the securities laws and protection of the investing public," *id.* at 311, 105 S.Ct. 2622.

5. A s to Biss' cross-appeal, the district court, as noted, never expressly acted on the motion but instead, proceeded to trial and judgment, thereby, as Biss argues, effectively denying the motion as moot. Since, however, we here vacate the district court's judgment, Biss' summary judgment motion, whether viewed as undecided or as denied, resumes its interlocutory status and thereby lies outside our jurisdiction. *West v. Goodyear Tire & Rubber Corp.*, 167 F.3d 776, 781 (2d Cir.1999).