**COBALT MULTIFAMILY INVESTORS I, LLC, et al., Plaintiffs,**

v.

**Lisa ARDEN, et al., Defendants.**

**No. 06 Civ. 6172(KMW)(MHD).**

United States District Court, S.D. New York.

Sept. 30, 2011.

tractors exceeded the weight of which the Steiger brake should have been able to stop.

Joseph E. Gasperetti, Leonard Weintraub, Paduano & Weintraub, New York, NY, for Plaintiffs.

Howard Kagan, Howard Kagan Esq., Brooklyn, NY, James O. Drucker, Kase & Druker, Garden City, NY, Steven T. Halperin, Halperin & Halperin, P.C., Anthony Paduano, Paduano & Weintraub, New York, NY, for Defendants.

## OPINION AND ORDER

KIMBA M. WOOD, District Judge.

### I. Background

On February 24, 2011, Anthony Paduano, Esq., the court-appointed receiver ("Receiver") for Plaintiffs Cobalt Multifamily Investors I LLC, Cobalt Multifamily CO. I, LLC, Cobalt Capital Funding, LLC, and Vail Mountain Trust ("the Cobalt Entities") moved for summary judgment against Arthur Landsman, Michael Eisemann, Susan Kagan, John Dundon (the "individual defendants"), and Comvest Financial Corporation (collectively, "Defendants").[1]

The Receiver moved for summary judgment on (1) his first cause of action, against Defendants for violations of Section 12(a)(1) of the Securities Act by selling unregistered securities, and (2) his third cause of action against Defendants for disgorgement of commissions paid to Defendants for their sale of unregistered securities, and for additional disgorgement under the theory that Defendants have been unjustly enriched.

On September 9, 2011, Magistrate Judge Michael H. Dolinger issued a Report and Recommendation (the "R & R"), familiarity with which is assumed. In the R & R, Judge Dolinger recommended that (1) summary judgment on the Receiver's first cause of action for sale of unregistered securities be granted against the individual defendants, but denied against Comvest Financial Corporation; and (2) summary

judgment on the Receiver's third cause of action be granted as against the individual defendants, who shall be ordered to disgorge the commissions that they received for their sale of unregistered securities; but (3) summary judgment be denied against Defendant for additional disgorgement on the theory of unjust enrichment.

### II. Legal Standard

The R & R informed the parties that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), they had fourteen days from service of the R & R to file any objections. No objections have been filed to the Report, and the time to object has expired.

When no objections are filed to an R & R, a district court need only satisfy itself that there is no "clear error on the face of the record" in order to accept the recommendation. Fed.R.Civ.P. 72(b) advisory committee's note; see also Nelson v. Smith, 618 F.Supp. 1186, 1189 (S.D.N.Y. 1985).

As noted in the R & R, the parties' failure to object to the R & R also precludes appellate review of this Court's decision to adopt the R & R. The Second Circuit has held that failure to timely object to a magistrate judge's report and recommendation operates as a waiver of appellate review of the district court's ultimate order. See DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir.2000) (citing Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir.1989)). The Supreme Court has also upheld this practice, "at least when the parties receive clear notice of the consequences of their failure to object." Small, 892 F.2d at 16 (citing Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985)).

---

1. All other defendants have either settled or have had judgments entered against them.

### III. *Analysis*

The Court has reviewed the R & R and finds it to be well-reasoned and free of any clear error on the face of the record.

The Court thus adopts the R & R in its entirety. Accordingly, (1) summary judgment on the Receiver's first cause of action for sale of unregistered securities is GRANTED against the individual defendants and denied against Comvest; and (2) summary judgment on the Receiver's third cause of action is GRANTED against the individual defendants, who are ordered to disgorge the commissions that they received for their sale of unregistered securities;[2] and (3) summary judgment is DENIED with respect to any additional disgorgement on the theory of unjust enrichment.

The Receiver shall submit a status letter to the Court by October 12, 2011 outlining how he intends to proceed with the case, and whether the case should be closed.

The Clerk of Court shall terminate Docket Entry Number 139.

SO ORDERED.

### REPORT & RECOMMENDATION

MICHAEL H. DOLINGER, United States Magistrate Judge

Anthony Paduano, Esq., is the court-appointed receiver for plaintiffs Cobalt Multifamily Investors I, LLC, Cobalt Multifamily Co. I, LLC, Cobalt Capital Funding, LLC, and Vail Mountain Trust, which we refer to collectively as "the Cobalt entities." The receiver was appointed after the Securities and Exchange Commission (the "Commission") initiated a lawsuit against the three principals of Cobalt— Mark Shapiro, Irving Stitsky and William Foster—for securities fraud. The receiver brought this action to recover commissions that were paid to Cobalt sales employees while the fraud was ongoing.

On February 24, 2011, the receiver moved for summary judgment against Arthur Landsman, Michael Eisemann, Susan Kagan, John Dundon (together, the "individual defendants"), and Comvest Financial Corporation. All other defendants have settled or have had judgments entered against them. (Decl. of Anthony Paduano, Esq. ("Paduano Decl.") p. 2 n. 1, Feb. 23, 2011).[1] For the reasons set forth below, we recommend that the motion be granted in part and denied in part.

### PROCEDURAL HISTORY

On March 27, 2006, the Commission filed an enforcement action that arose out of a fraudulent scheme perpetrated by Shapiro, Stitsky and Foster. (*See* Paduano Decl. ¶ 2). The receiver was appointed on a temporary basis the next day, *see Sec. & Exch. Comm. v. Cobalt Multifamily Investors I, LLC,* 06–cv–236 (Order, 1–3, Mar. 28, 2006), and his appointment was made permanent on July 20, 2006. *See id.* (Order, 1 July 20, 2006). Shapiro and Stitsky were both sentenced to 85 years in prison, and Foster was sentenced to three years in prison plus three years of supervised release. *See United States v. Shapiro,* 06–cr–357 (Shapiro J., 2, Oct. 21, 2010; Foster J., 4, Sept. 22, 2010; Stitsky J., 2, July 7, 2010); (Paduano Decl. Exs. D–F).

The receiver brought this lawsuit in 2006, asserting three claims against defendants. (Compl. ¶¶ 91–102, Aug. 11, 2006). Defendants are sales employees of the Co-

---

2. Defendants Eisemann, Landsman, Kagan, and Dundon are ordered to disgorge $39,115.59, $13,425.00, $71,234.45, $2,223.00, respectively. (See R & R at 367.)

1. The status of remaining defendants was confirmed by Steven Castaldo, Esq., associate at Paduano & Weintraub, in a telephone conversation on September 8, 2011.

balt entities—and corporate entities owned by employees—who solicited investments in the Cobalt entities by means of alleged misrepresentations. (Compl. ¶¶ 5, 17, 20, 24, 48). The receiver first alleged that defendants had sold unregistered securities, in violation of Section 12(a)(1) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77a, *et seq.* (*Id.* ¶¶ 91–94). The receiver's second claim, which he does not pursue on this motion, was for fraudulent conveyance. (*Id.* ¶¶ 95–99). By his third cause of action, the receiver sought disgorgement of commissions paid to defendants under the theory that the defendants had been unjustly enriched. (*Id.* ¶¶ 100–02).

The receiver now moves for summary judgment against defendants on the first and third causes of action. (Pl.'s Mem. of Law in Support of Mot. for Summ. J. at 1, Feb. 24, 2011). With the exception of *pro se* defendant Michael Eisemann, who sent a letter to the court in opposition, defendants have not responded to the receiver's motion.

## ANALYSIS

We first discuss the admissibility of defendant Eisemann's letter and then analyze the merits of the receiver's motion.

### A. *The Admissibility of Defendant Eisemann's Letter*

Defendant Eisemann's letter opposing this motion does not meet the standards for admissibility set forth in Federal Rule of Civil Procedure 56 or Local Civil Rule 56, does not provide admissible evidence controverting the receiver's motion, and attempts to raise defenses that are without merit. Accordingly, we recommend that the letter be disregarded.

■ Courts afford *pro se* litigants greater latitude than represented parties. *See, e.g., Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) ("submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest'* " (quoting *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006))). This solicitude is particularly important in the summary judgment context, in which *pro se* litigants might be unaware of the deleterious effects of failing to respond adequately to a summary-judgment motion. *See Tracy v. Freshwater,* 623 F.3d 90, 101–02 (2d Cir.2010). Accordingly, when a party opposing a *pro se* litigant moves for summary judgment, it must notify that litigant of both the potential repercussions of a failure to respond as well as the formal requirements of any such response. *See id.;* S.D.N.Y. Local Civil Rule 56.2. Eisemann was so notified here. (*See* Notice to Pro Se Litigant, Feb. 24, 2011).

In pertinent part, Eisemann's letter reads:

> I hereby oppose the plaintiffs [sic] request for a summary judgment against me. I believe there are issues of fact that can be determined by trial, not motion. The issue is if I am entitled to reasonably rely on the information provided to me by Martin Unger, counsel for Cobalt. I was advised by Mr. Unger that this offering was proper and there was no need to register. I had no reason to believe this information was not correct. I respectfully request the court to deny the request for summary judgment against me.

(Letter to the Court from Michael Eisemann, received Mar. 18, 2011).

■ The improper form of Eisemann's letter renders it inadmissible. In order to be admissible, a letter must either be sworn and based on personal knowledge, *see Beyah v. Coughlin,* 789 F.2d 986, 989–90 (2d Cir.1986), or declared under penalty

of perjury. *See* 28 U.S.C. § 1746; *see also* Fed.R.Civ.P. 56(c)(4). Eisemann's letter meets neither criterion. The fact that Eisemann is *pro se* does not relieve him of the duty of complying with federal and local rules. *See Hamlett v. Srivastava,* 496 F.Supp.2d 325, 328 (S.D.N.Y.2007) ("That a party appears pro se, though entitled to some latitude not accorded to litigants represented by counsel, does not relieve him of the obligation to respond to a motion for summary judgment with sufficient admissible evidence"). In addition, Eisemann is aware of these formal requirements, as the notice he was given included not only the text of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, but also a document that emphasized that any opposition to a summary judgment motion must be supported by admissible evidence, such as a sworn affidavit. (*See* Notice to Pro Se Litigant).

■ Eisemann's letter is also substantively deficient. A party opposing summary judgment "is required to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2d Cir.2008) (internal quotation marks omitted). The opposing party must demonstrate more than "[t]he mere existence of a scintilla of evidence in support" of his position; he "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Antunes v. Putnam/Northern Westchester Bd. of Coop. Educ. Servs.,* 2011 WL 1990872, *3 (S.D.N.Y. May 19, 2011) (internal citations and quotation marks omitted). Eisemann provides only a conclusory allegation that

there is a question of fact that should be tried by jury. (*See* Eisemann letter). Accordingly, his letter does not fulfill the substantive requirements for opposition to a summary-judgment motion.

■ Finally, we note that the defenses that Eisemann attempts to raise are without merit. Giving Eisemann an appropriate amount of latitude, we interpret his letter to introduce two issues relating to the receiver's first cause of action: first, that he should escape liability because he acted in reliance on the advice of Cobalt's counsel; second, that he did not have the requisite state of mind to be liable for selling unregistered securities. These defenses would have no merit even if they were properly raised, since selling unregistered securities is a strict liability offense. *See Sec. & Exch. Comm. v. Cavanagh,* 2004 WL 1594818, *17 (S.D.N.Y. July 16, 2004) ("the advice of counsel defense ... provides no protection against a violation of a strict liability statute like Section 5"), *aff'd,* 445 F.3d 105 (2d Cir.2006); *Sec. & Exch. Comm. v. U.N. Dollars Corp.,* 2003 WL 192181, *2 (S.D.N.Y. Jan. 28, 2003) ("[S]cienter is not an element of a Section 5 violation") (citing cases) *aff'd sub nom. Sec. & Exch. Comm. v. Harris,* 96 Fed. Appx. 778 (2d Cir.2004).[2]

Eisemann's letter is deficient in form and substance, and the defenses he attempts to raise are without merit. Accordingly, this court should not hesitate to disregard the letter when evaluating the receiver's motion. *See LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.,* 424 F.3d 195, 205 (2d Cir.2005) ("The evidence considered on summary judgment must generally be admissible evidence ... a district court has wide discretion in determin-

2. As we will later discuss more fully, *infra,* at 11, section 12(a)(1), which the receiver invokes for the first cause of action, describes the civil liability to which a person who "offers or sells a security in violation of Section 5"—that is, who offers or sells unregistered securities. 15 U.S.C. §§ 77e & 77*l*.

ing which evidence is admissible") (internal citations and quotations omitted); *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir.1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment").

### B. The Merits of the Receiver's Summary Judgment Motion

#### 1. Summary–Judgment Standards

Summary judgment will be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant bears the initial burden of informing the court of the basis for his motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making this judgment, all evidence must be viewed in the light most favorable to the non-moving party, *Overton v. N.Y. State Div. of Military & Naval Affairs,* 373 F.3d 83, 89 (2d Cir.2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.,* 391 F.3d 77, 83 (2d Cir.2004).

If the non-moving party has the burden of proof as to a particular issue, the movant may satisfy his initial burden by demonstrating the absence of evidence supporting an essential element of the non-moving party's claim. *See, e.g., Repp v. Webber,* 132 F.3d 882, 890 (2d Cir.1997); *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir.1996), *cert. denied,* 517 U.S. 1190, 116 S.Ct. 1678, 134 L.Ed.2d 780

(1996). If the movant fails to meet his initial burden, the motion will fail even if the opponent does not submit any evidentiary matter to establish a genuine factual issue for trial. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir.2004); *BBS Norwalk One, Inc. v. Raccolta, Inc.,* 117 F.3d 674, 677–78 (2d Cir.1997).

When, as here, a summary judgment motion is unopposed, the movant must nonetheless meet his burdens. *See Vt. Teddy Bear,* 373 F.3d at 244. The motion may fail if the moving party's submission fails to establish that no material issue of fact remains for trial, *Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir.2001), or if the "undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *See Vt. Teddy Bear,* 373 F.3d at 244. The non-moving party is not required to defend itself against "an insufficient showing." *Amaker,* 274 F.3d at 681 (quoting *Adickes,* 398 U.S. at 161, 90 S.Ct. 1598).

#### 2. The Alleged Sale of Unregistered Securities

The receiver alleges that defendants violated Section 12(a)(1) of the Securities Act. (Compl. ¶¶ 91–94). Section 12(a)(1) establishes civil liability for breach of Section 5 of the Securities Act, *see* 15 U.S.C. § 77*l*, which prohibits the use of the mails or means of interstate commerce to offer or sell a security unless it is registered with the Commission or is exempt from registration. *See* 15 U.S.C. § 77e.

##### a. The Elements of a Section 5 Violation

■ A *prima facie* case for violation of Section 5 of the Securities Act is comprised of three elements: "(1) [t]hat the

defendant directly or indirectly sold or offered to sell securities; (2) that no registration statement was in effect for the subject securities; and (3) that interstate means were used in connection with the offer or sale." *Sec. & Exch. Comm. v. Universal Exp., Inc.*, 475 F.Supp.2d 412, 422 (S.D.N.Y.2007) (citing cases), *aff'd sub nom. Sec. & Exch. Comm. v. Altomare*, 300 Fed.Appx. 70 (2d Cir.2008).

■ It is undisputed that each defendant fulfills the first element. Each defendant solicited investors; defendants Kagan, Dundon, Eisemann, and Landsman each "made telephone calls ... to potential investors to invite them to purchase" Cobalt securities. (Paduano Decl. ¶ 12). Dundon also solicited investors on behalf of Comvest, and Comvest received commissions for the successful sales. (*Id.* at ¶ 38). It is also clear that the securities were unregistered, since Cobalt's offering materials indicated as much. The securities were offered through private placement memoranda (each a "PPM") dated December 29, 2003, July 1, 2004, and December 15, 2004. (Paduano Decl. ¶¶ 13–14). Each PPM expressly stated that the securities it offered were unregistered. (*See id.* Ex. I (Dec. 2004 PPM), ii; *id.* Ex. J (July 2004 PPM), ii; *id.* Ex. K (Dec.2004 PPM), ii).

■ Finally, each individual defendant meets the third element of a Section 5 violation, but Comvest does not. As noted above, Defendants Kagan, Dundon, Eisemann, and Landsman each "made telephone

calls ... to potential investors to invite them to purchase" Cobalt securities. (Paduano Decl. ¶ 12). The third element of a Section 5 violation, requiring the use of interstate means in connection with the sale or offering of a security, "is broadly construed to include ... intrastate telephone calls." *Sec. & Exch. Comm. v. Softpoint, Inc.*, 958 F.Supp. 846, 861 (S.D.N.Y. 1997) *aff'd*, 159 F.3d 1348 (2d Cir.1998). Therefore, Kagan, Dundon, Eisemann, and Landsman meet the jurisdictional requirement. With regard to Comvest, however, it is established only that Dundon "solicited investors" while acting as Comvest's representative. (*Id.* at ¶ 38). The receiver has not established that Dundon made calls or used other means of interstate commerce while acting on behalf of Comvest. Given the mandate to construe evidence presented on summary judgment in favor of the nonmoving party, we recommend that this court find that Comvest does not meet the jurisdictional requirement of Section 5 for purposes of this motion.

### b. *Exceptions to the Registration Requirement*

The receiver alleges that the Cobalt securities were not exempt from the registration requirement, but he appears to misapply the exemption criteria. We first discuss the application of Regulation D to the Cobalt securities before turning to the receiver's failure to demonstrate the absence of a registration exemption.[3]

---

**3.** Though this issue was not raised by the receiver, we note that the exemptions that we discuss are unavailable if the Cobalt entities engaged in general solicitation. *See* 17 C.F.R. § 230.502; *Sec. & Exch. Comm. v. Tecumseh Holdings Corp.*, 2009 WL 4975263, *4 (S.D.N.Y. Dec. 22, 2009) (stating that a security cannot be exempted if the offeror engages in general solicitation or advertising); *Sec. & Exch. Comm. v. Opulentica, LLC*, 479

F.Supp.2d 319, 328 (S.D.N.Y.2007) ("The exemptions from registration contained in Rules 505 and 506 of Regulation D of the Securities Act are not applicable because defendants engaged in a general solicitation."). Cold calling, when enacted on a nationwide scale, has been found to constitute general solicitation. *Tecumseh*, 2009 WL 4975263, *4. There is mention in the record of cold calling (*see* Paduano Decl. Ex. O (Eisemann Dep., Mar.

In the various PPMs, the Cobalt entities claimed that their securities were exempt from the registration requirement. (*See supra*, at 12; Dec. 2003 PPM, ii; July 2004 PPM, ii; Dec.2004 PPM, ii). The December 2003 PPM claimed exemption under Regulation D and Rule 505; the 2004 PPMs claimed exemption under Regulation D and Rule 506.[4] (*Id.*).

To be exempt from the registration requirement under Rule 505, an offering must have an aggregate offering price not exceeding five million dollars and must be purchased by no more than thirty-five purchasers. 17 C.F.R. § 230.505. Rule 506 has no aggregate offering price cap, and exempts offerings sold to thirty-five or fewer purchasers if "each purchaser who is not an accredited investor either alone or with his purchaser representative(s) has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment." 17 C.F.R. § 230.506. Importantly, the calculation of the number of purchasers under Rules 505 and 506 excludes accredited investors. 17 C.F.R. § 230.501(e).

The receiver indicates that $22 million of securities were sold to more than thirty-five investors, "many" of whom were not accredited. (Paduano Decl. ¶¶ 21–22). But the receiver does not specify how much money was invested in each offering, and he does not give an exact count of the

unaccredited investors. Accordingly, it is unclear whether the December 2003 offering exceeded $5 million,[5] whether any offering was sold to more than thirty-five unaccredited investors, or whether all unaccredited investors in the 7/1/04 and 12/15/04 offerings (whether considered jointly or separately) were capable of evaluating the merits and risks of the investment. Accordingly, the receiver has failed to establish that these Cobalt securities were required to be registered.

c. *The Effect of the Receiver's Failure to Show That the Cobalt Securities Were Not Exempt*

■ After the receiver made a *prima facie* case for a violation of Section 5 by the individual defendants, he ultimately failed to demonstrate that Cobalt securities were required to be registered. We nonetheless recommend that the receiver's motion be granted with regard to the individual defendants for the reasons set forth below.

Once the receiver established his *prima facie* case for a violation of Section 5, the individual defendants bore the burden of demonstrating that a registration exemption applied. *See Sec. & Exch. Comm. v. Empire Dev. Group, LLC*, 2008 WL 2276629, *7 (S.D.N.Y. May 30, 2008) ("If plaintiff makes out a *prima facie* case for a Section 5 violation, defendants then bean the burden of proving the applicability of an exemption") (internal quotation marks

26, 2009), 31–33), but there is no evidence of the breadth of the cold-calling campaign. Accordingly, it is unclear whether Cobalt's cold-calling campaign would exclude application of the Rule 505 and 506 exemptions discussed herein.

4. Under Regulation D, offerings made less than six months apart can be considered a single offering subject to certain criteria; this is referred to as integration. *See* 17 C.F.R. § 230.502. For purposes of this analysis, it is not necessary to decide whether the 2004

offerings would be integrated. However, we think that this would be likely since they offered the same class of security (*see* July 2004 PPM, i; Dec.2004 PPM, i), for the same price (*id.*), and a similar putative purpose. (*See* July 2004 PPM, 11–13; Dec.2004 PPM, 15–17).

5. The December 2003 PPM indicates a "maximum offering" of $2 million. (*See* Dec. 2003 PPM, i).

and alterations omitted); *Universal,* 475 F.Supp.2d at 422 ("A defendant may rebut a prima facie case by snowing that the securities involved were not required to be registered"). By not opposing this motion—or, in Eisemann's case, by offering only irrelevant assertions—the individual defendants failed to rebut the receiver's *prima facie* case; ·therefore, the receiver has borne his burden of demonstrating that he is entitled to judgment as a matter of law on the facts asserted.

The receiver also bears the burden of demonstrating that there exists no genuine dispute as to any material fact. *Amaker,* 274 F.3d at 681. A colorable argument could be made that the receiver, by stating that the Cobalt securities were required to be registered but failing to effectively support that statement failed to meet this burden. Ultimately, we believe this argument must fail. "A fact issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Bessemer Trust Co., N.A. v. Branin,* 618 F.3d 76, 85 (2d Cir.2010) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 243, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Given the individual defendants' burden to prove that an exemption applies and their failure to rebut the receiver's *prima facie* case of a violation of Section 5, a reasonable jury could not find for the individual defendants. *See Universal,* 475 F.Supp.2d. at 426 (concluding that summary judgment was appropriate when no reasonable factfinder could find that unregistered securities were subject to an exemption).

It is true that summary judgment standards do not embrace default judgment principles, *Vt. Teddy Bear,* 373 F.3d at 242, and a party should not be penalized for failing to oppose a motion if the moving party does not present sufficient evidence. *Amaker,* 274 F.3d at 681 (quoting *Adickes,*

398 U.S. at 161, 90 S.Ct. 1598). But it does not follow that failing to respond to a motion for summary judgment has no negative repercussions; rather, it is a "perilous path." *Amaker,* 274 F.3d at 681. Though it appears conceivable that the individual defendants may have been able to successfully defend themselves on this motion, they chose not to do so and therefore failed to rebut the receiver's *prima facie* case. Accordingly, we recommend that summary judgment on the receiver's first cause of action be granted against the individual defendants and denied against Comvest.

### d. *The Receiver's Request for Disgorgement*

■■■■ The receiver seeks to recover the commissions that were paid to defendants for their sale of unregistered securities. (*See* Paduano Decl. ¶ 2; Pl.'s Mem. of Law, p. 8). Disgorgement is an "equitabl[e] remed[y] premised on the powers and discretion of the Court to prevent unjust gain and to deter others." *Universal,* 475 F.Supp.2d at 434. It is well-settled that disgorgement is an appropriate remedy for breach of federal securities laws. *See, e.g., Sec, & Exch. Comm. v. Zwick,* 2007 WL 831812, *22 (S.D.N.Y. Mar. 16, 2007) *aff'd,* 317 Fed.Appx. 34 (2d Cir.2008). This is true even when the defendants may not have acted with scienter, as is the case here; disgorgement is "remedial and not punitive." *See Sec. & Exch. Comm. v. World Gambling Corp.,* 555 F.Supp. 930, 934 (S.D.N.Y.1983) (ruling that disgorgement, but not a permanent injunction, was appropriate when the owner and controlling officer of a firm were unaware that a principle trader was selling unregistered securities) (internal citations removed); *Sec. & Exch. Comm. v. DiBella,* 409 F.Supp.2d 122, 135 (D.Conn. 2006) (finding that disgorgement was proper where the Commission "adequately pled

amounts by which the Defendants were allegedly unjustly enriched and the necessary connection between those amounts and the amount sought by disgorgement" even though it had not pled scienter).

■ Furthermore, this court has indicated that the receiver is an appropriate party to receive the disgorged commissions. *See Cobalt MultiFamily Investors I, LLC v. Lisa Arden,* 2010 WL 3791040, *3 (S.D.N.Y. Sept. 9, 2010) ("The salespeople are plainly not entitled to retain such commission payments, and the receiver appears to be a proper person to pursue those funds on behalf of the Cobalt estate, which in turn will presumably be held responsible for the ultimate reimbursement of the shareholders"), *adopted* 2010 WL 3790915 (S.D.N.Y. Sept. 28, 2010); *see also Hays v. Adam,* 512 F.Supp.2d 1330, 1343 (N.D.Ga.2007) ("[if] a receiver can recover Ponzi scheme profits from investors who have done nothing wrong, he would also be entitled to recover Ponzi scheme profits held by sales agents like the defendants, who illegally sold unregistered securities, and without whose efforts the scheme could not have occurred").

We have reviewed the documentation upon which the receiver based his calculation of disgorgement amounts for the individual defendants (*see* Paduano Decl. Exs. P (Eisemann payments), S (Kagan payments), V (Dundon payments), and X (Landsman payments)), and have confirmed that the disgorgement amounts proposed by the receiver comport with the documentation. We are not obligated to inquire further into these figures. *See Zwick,* 2007 WL 831812 at *22 ("The disgorgement amount need only be a reasonable approximation of profits causally connected to the violation ... Any risk of uncertainty in calculating disgorgement should fall on the wrongdoer whose illegal conduct created that uncertainty") (inter-

nal citation and quotation marks omitted). Accordingly, we recommend defendant Eisemann be ordered to disgorge $39,115.59, defendant Landsman be ordered to disgorge $13,425.00, defendant Kagan be ordered to disgorge $71,234.45, and defendant Dundon be ordered to disgorge $2,223.00. As discussed above, the receiver did not demonstrate that Comvest meets the jurisdictional requirement for a Section 5 violation; consequently, we recommend that the receiver's motion for summary judgment on his first cause of action be denied with regard to Comvest.

### 3. *The Receiver's Unjust–Enrichment Claim*

■ The receiver also seeks recovery under the theory that defendants were unjustly enriched by receiving commissions from the Cobalt entities. To establish unjust enrichment under New York law, a plaintiff must show that the defendant was enriched at the plaintiff's expense, and that restitution is required "in equity and good conscience." *Design Strategies, Inc. v. Davis,* 384 F.Supp.2d 649, 676 (S.D.N.Y.2005) *aff'd,* 469 F.3d 284 (2d Cir.2006). In considering whether to order restitution, a court may take into account not only the culpability of the defendant but also that of the plaintiff. *See Laugh Factory, Inc. v. Basciano,* 608 F.Supp.2d 549, 560 (S.D.N.Y.2009) ("It is well-established that a court of equity will not exercise its power in favor of a plaintiff whose actions show inequitable conduct on bad faith where the misconduct has a material relation to the equitable relief that plaintiff seeks"); *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.,* 17 F.Supp.2d 275, 310 (S.D.N.Y.1998) ("Under New York law, a court may decline to exercise its equitable powers in favor of a party whose unconscionable act ... has immediate and necessary relation to the matter

that he seeks in respect of the matter in litigation") (internal quotation omitted). Thus, unlike disgorgement, which "aims to deprive the wrongdoer of ill-gotten gains," restitution "aims to make the damaged persons whole." *Sec. & Exch. Comm. v. Fischbach Corp.*, 133 F.3d 170, 174 (2d Cir.1997); *see also Sec. & Exch. Comm. v. Huffman*, 996 F.2d 800, 802 (5th Cir.1993) (disgorgement "wrests ill-gotten gains from the hands of a wrongdoer," but restitution "aim[s] to compensate the victims of wrongful acts").[6]

As established above, the receiver did not show that Comvest violated securities laws, and the receiver identifies no other basis for his claim. Accordingly, we recommend that the unjust enrichment claim against Comvest be denied. We discuss below the merits of the receiver's claim against the individual defendants.

### a. The Receiver's Standing

■ We emphasize that, for this cause of action to succeed against the individual defendants, they must have been unjustly enriched at the expense of the Cobalt entities, not the Cobalt investors. The Second Circuit held in *Shearson Lehman Hutton,*

*Inc. v. Wagoner* that a bankruptcy trustee can bring claims on behalf of the bankrupt corporation that she represents, but not on behalf of that entity's creditors. 944 F.2d 114, 118 (2d Cir.1991); *see also Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir.1995) (holding that an equity receiver may sue only to redress injuries to the entity in receivership); *Scholes v. Stone*, 821 F.Supp. 533, 535 (N.D.Ill.1993) ("[A] receiver can bring only those claims belonging to the entity it represents ... receivers in general have standing to assert state-law claims on behalf of entities in receivership but such claims must involve damages which belong to the entities rather than to the investors"). This court has indicated that the *Wagoner* rule applies to the receiver because he fulfills a role "sufficiently analogous" to that of a bankruptcy trustee. *Cobalt Multifamily Investors I, LLC v. Shapiro*, 2008 WL 833237, *3 (S.D.N.Y. Mar. 28, 2008) *on recons.*, 2009 WL 2058530 (S.D.N.Y. July 15, 2009). Accordingly, by necessity, the receiver can seek restitution only under the theory that the defendants were unjustly enriched at the expense of Cobalt, as opposed to Cobalt investors.[7]

---

**6.** We note that while many courts have drawn a distinction between disgorgement and restitution along these lines, some have equated the two. *See Sec. & Exch. Comm. v. First. Pac. Bancorp*, 142 F.3d 1186 (9th Cir.1998) (concluding that, regardless of the terminology used by the lower trial, the remedy—the appellate court specified that it should correctly be called 'disgorgement'—was correct to "depriv[e] the wrongdoer of ill-gotten gains" and comparing cases that equate the two concepts with those that distinguish them).

Even if we were to conclude that restitution in this instance is for all practical purposes equivalent to disgorgement, we arrive at the same general outcome in that we recommend that the receiver recover defendants' wrongful gain from their violation of securities law. In this alternative scenario, the question of unjust enrichment under New York state law

becomes an interesting but purely academic point.

**7.** Any argument that this issue is improperly raised because defendants waived their right to object to receiver's standing would be unsuccessful. The *Wagoner* doctrine is based on constitutional standing, *see Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1091 (2d Cir. 1995) (stating that the Second Circuit has linked the constitutional "case or controversy" standing requirement to the *Wagoner* decision); *Am. Tissue, Inc. v. Arthur Andersen, L.L.P.*, 2003 WL 22909155, *2 (S.D.N.Y. Dec. 9, 2003) (discussing *Wagoner* as raising issues of constitutional standing), and a lack of constitutional standing may be raised *sua sponte. See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care*, 433 F.3d 181, 198 (2d Cir.2005) ("Because the standing issue goes to this Court's subject

### b. *The Degree of Each Party's Wrongdoing*

It is clear that the individual defendants were enriched at the expense of the Cobalt entities, but it is far from clear that equity and good conscience require restitution. The receiver has established that the individual defendants sold unregistered securities, which is a strict liability offense; the receiver did not have to, and did not, prove that any defendant had a culpable state of mind.[8] Broadly speaking, while the individual defendants may be more blameworthy than a purely innocent party, on the present record they may be found less culpable than an intentional wrongdoer. In order to understand whether restitution is fair, we must understand whether the degree of Cobalt's blameworthiness, if any, militates against the use of this court's equitable powers.

 Analysis of a plaintiff's wrongdoing normally arises when a defendant faced with an unjust-enrichment claim raises an *in pari delicto* defense. "The maxim is *in pari delicto potior est conditio defendentis*, that is, where parties are equally at fault, the defending party is in the stronger position ... Generally translated, it means the plaintiff should not therefore recover, and the parties should be left where they are." *Ross v. Bolton,* 904 F.2d 819, 824 (2d Cir.1990) (internal quotation marks omitted). The concept is based on a belief that granting equitable relief to a wrongdoer plaintiff would "contravene the public good by aiding one to profit from his own wrong." *Id.* Here, defendants did not raise an *in pari delicto* defense; accordingly, it would generally be considered to have been waived. *See, e.g., Taylor v. United States,* 485 U.S. 992, 992, 108 S.Ct. 1300, 99 L.Ed.2d 510 (1988) ("Any matter 'constituting an avoidance or affirmative defense' ... must be pleaded in a timely manner or it is deemed to be waived"); *Butler v. Catinella,* 58 A.D.3d 145, 150, 868 N.Y.S.2d 101, 106 (2d Dep't 2008) ("Affirmative defenses ... as a general rule, would be deemed waived if not raised in the pleadings"). However, the concept underlying the *in pari delicto* defense is illuminating to our consideration of the wisdom of recommending restitution.[9]

In *Bateman Eichler, Hill Richards, Inc. v. Berner,* the Supreme Court established a two-prong test for application of an *in pari delicto* defense in cases dealing with securities laws, allowing the defense "where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with

matter jurisdiction, it can be raised *sua sponte*"). In addition, the receiver did not precisely identify the party allegedly damaged by the commission payments, thus necessitating that we investigate the receiver's standing in order even to begin our analysis of his claim.

8. The receiver does assert that defendant Eisemann sold unregistered securities knowingly (Paduano Decl. ¶ 27); Eisemann stated in his deposition that he did not believe selling unregistered securities was illegal. (Eisemann Dep., 25).

9. We believe it makes little analytical difference whether we use the *in pari delicto* concept as a guide to considering the equities of this case or whether we suggest that it be raised *sua sponte* as akin to the equitable doctrine of unclean hands. We have found no basis to conclude that raising an *in pari delicto* defense *sua sponte* would be impermissible. *See, e.g., Simmons v. Benn,* 96 A.D.2d 507, 508, 464 N.Y.S.2d 811, 812 (2d Dep't 1983) (confirming that a referee was permitted to raise an unclean hands defense *sua sponte*); *Valentine v. Metro. Life Ins. Co.,* 2004 WL 2496074, *4 (S.D.N.Y. Nov. 4, 2004) ("a judge may raise the unclean hands doctrine *sua sponte*").

the effective enforcement of the securities laws and protection of the investing public." 472 U.S. 299, 310–11, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985); *see also BrandAid Marketing Corp. v. Biss,* 462 F.3d 216, 218–19 & n. 4 (2d Cir.2006); *Koch Indus., Inc. v. Aktiengesellschaft,* 727 F.Supp.2d 199, 212–13 (S.D.N.Y.2010). Though we examine concepts that underlie the *in pari delicto* defense and do not apply the defense directly, we nonetheless are cognizant of the Supreme Court's instruction to consider the public good in a situation such as this. *Id.*

 Shapiro, Stitsky, and Foster, acting on behalf of the Cobalt entities, engaged in a massive fraud. *See United States v. Shapiro,* 06–cr–357 (Shapiro J., 2; Foster J., 4; Stitsky J., 2); (Paduano Decl. ¶¶ 5–7 & Exs. D–F). "New York law recognizes that when a corporation's managers act within the scope of their employment, their actions may generally be imputed to the corporation." *In re Allou Distributors, Inc.,* 387 B.R. 365, 393 (Bankr.E.D.N.Y.2008); *see also In re Magnesium Corp. of Am.,* 399 B.R. 722, 762 (Bankr.S.D.N.Y.2009) ("Even if (as is normally the case) the trustee did nothing wrong, and is instead an innocent fiduciary trying to recover for the injured corporation ... former management's imputed misconduct gives rise to an *in pari delicto* defense"). Under this general rule, Shapiro's, Stitksy's, and Foster's intentional misconduct would be imputed to the Cobalt entities, and the corporation would be more to blame than the individual defendants for the violation of securities laws at issue.

 There is an exception to this general rule. A principal's actions will not be imputed to his company if he acted solely for his own interest and adversely to the interest of the company. *See, e.g., In re Bennett Funding Group,* 336 F.3d 94, 100

(2d Cir.2003) (identifying this as the "adverse interest" exception); *Wight v. BankAmerica Corp.,* 219 F.3d 79, 87 (2d Cir. 2000). The adverse-interest exception "has been defined very narrowly in New York," and applies only when a "fraud was entirely self-interested and ... the corporation did not benefit in any way." *Symbol Tech., Inc. v. Deloitte & Touche, LLP,* 69 A.D.3d 191, 197–98, 888 N.Y.S.2d 538, 542–42 (N.Y.App.Div.2009). For the exception to apply, the wrongdoer agent must have "totally abandoned the principal's interests." *Ctr. v. Hampton Affiliates, Inc.,* 66 N.Y.2d 782, 784–85, 497 N.Y.S.2d 898, 900, 488 N.E.2d 828 (1985); *see also Kirschner v. KPMG LLP,* 15 N.Y.3d 446, 477, 912 N.Y.S.2d 508, 526, 938 N.E.2d 941 (2008).

The actions of Shapiro, Stitsky, and Foster that are pertinent to this lawsuit do not fit within this exception. Their offer and sale of unregistered securities, though ultimately intended for their personal gain, clearly enriched the Cobalt entities as well. While their fraud also led to Cobalt's downfall as the Cobalt entities were ultimately ordered to disgorge over $24.6 million (*see* Paduano Decl. ¶ 3), that injury stemmed from the discovery of the fraud as opposed to the fraud itself. Accordingly, it cannot be considered the type of harm that would invoke the adverse-interest exception. *Kirschner,* 15 N.Y.3d at 468, 912 N.Y.S.2d at 520, 938 N.E.2d 941, ("any harm from the discovery of the fraud rather than from the fraud itself does not bear on whether the adverse-interest exception applies"). This fits with the agency principles underlying the *in pari delicto* doctrine, which impute the actions of an agent to his corporate principal, even when he commits negligence or fraud "in every case, except where the corporation is actually the agent's intended victim." *Kirschner,* 15 N.Y.3d at 466, 912 N.Y.S.2d at

518, 938 N.E.2d 941 (citing *Hampton Affiliates, Inc.*, 66 N.Y.2d at 784, 497 N.Y.S.2d at 899–900, 488 N.E.2d 828). In this particular scheme, it was the investors of Cobalt, not the Cobalt entities themselves, who were the intended victims of the fraud perpetrated by Shapiro, Stitsky and Foster and aided, knowingly or otherwise, by defendants. Since the adverse-interest exception does not apply, the general rule governs; the actions of Shapiro, Stitsky, and Foster should be imputed to the Cobalt entities.[10] Accordingly, the first *Bateman* requirement—that the plaintiff bear "at least substantially equal responsibility for the violations he seeks to redress"—is satisfied. 472 U.S. at 310–11, 105 S.Ct. 2622.[11]

The second prong of the *Bateman* test is fulfilled when "preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public." 472 U.S. at 311, 105 S.Ct. 2622. In *Bateman*, defrauded investors who invested based on inaccurate material non-public information sued the party who had provided the information. *Id.* at 301, 105 S.Ct. 2622. The Supreme Court held that allowing the defrauder's *in pari delicto* defense would interfere with policies favoring the efficient exposure of securities-law violations. *Id.* at 319, 105 S.Ct. 2622 ("the public interest will most frequently be advanced if defrauded tippees are permitted to bring suit and to expose illegal practices by corporate insiders and broker-dealers to full public view for appropriate sanctions").

In a case dealing with the sale of unregistered securities, the Supreme Court held that the second prong of the *Bateman* test was satisfied when the plaintiff's role was primarily that of a promoter, rather than an investor. *Pinter v. Dahl*, 486 U.S. 622, 638, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). The Supreme Court reasoned that, in situations where the plaintiff is an investor, "precluding suit would interfere significantly with effective enforcement of the securities laws and frustrate the primary objective of the Securities Act." *Id.* The Court identified this primary objective as being "to protect investors by requiring publication of material information thought necessary to allow them to make informed investment decisions concerning public offerings of securities in interstate commerce." *Id.* "Thus, the *in pari delicto* defense may defeat recovery in a 12(1) action only where the plaintiff's role in the offering or sale of nonexempted, unregistered securities is more as a promoter than as an investor." *Id.* at 639, 108 S.Ct. 2063.

Neither the transparency concern of *Bateman* nor the investorfocused approach of *Pinter* is implicated here. Rather than facilitating the discovery of fraudulent activity, allowing a clawback of commissions earned by employees of a fraudulent enterprise gives a disincentive to those employees to report the fraud, whereas preventing the Cobalt entities from recovering

---

**10.** The adverse-interest exception is itself subject to a limitation known as the "sole actor" rule. *See, e.g., In re Mediators, Inc.*, 105 F.3d 822, 827 (2d Cir.1997); *Cobalt*, 2009 WL 2058530 at *7–8. Since the adverse-interest exception does not apply, we do not discuss the sole actor rule here.

**11.** We note that in a parallel lawsuit we are recommending that the court deny a *Wagoner*-based dismissal of certain claims made by

the receiver against defendant lawyers (and their law firms) for the Cobalt entities. *Cobalt Multifamily Investors v. Shapiro*, 06–cv–6468 (Report and Recommendation, Sept. 9, 2011). That recommendation is limited to claims that pertain to conduct that directly injured the Cobalt entities—notably looting of their assets—and offered no benefit to those entities.

would further the regulatory system's interest in punishing fraudulent acts. With regard to the *Pinter* approach, defendants clearly engaged in promotional efforts with regard to the Cobalt securities, and there is no evidence that they also invested in the securities. Accordingly, following the Supreme Court's analysis in *Bateman* and *Pinter*, it seems that application of an *in pari delicto* defense—and, analogously, the concepts underlying such a defense—to this case would satisfy the second prong of the *Bateman* test.

This comports with the Second Circuit's ruling in *Ross v. Bolton*, in which the court considered the second prong of the *Bateman* test satisfied, and consequently allowed an *in pari delicto* defense, when the defendant engaged in "simply those [actions] of an innocent clearing agent conducting its ordinary business." 904 F.2d at 826. We concede that the relationship between a clearing agent and its client differs from the relationship between an employee and her employer. But this situation is otherwise similar to *Ross*, in that defendants did not stray from their ordinary course of business and acted without established scienter.[12]

We believe that, in this case's current disposition, allowing Cobalt's wrongdoing to thwart its attempt at recovery in unjust enrichment comports with the Supreme Court's instructions in *Bateman*.[13]

**12.** We recognize that the policy considerations of *Bateman* could potentially weigh against our recommendation of disgorgement of employee commissions. We note, however, that disgorgement—as distinguished from restitution—is supported by its own policy considerations, namely, the deterrence of securities-law violations by wrongdoers. *See, e.g., Official Comm. Of Unsecured Creditors of WorldCom, Inc. v. Sec. & Exch. Comm'n*, 467 F.3d 73, 81 (2d Cir.2006) (noting that the Exchange Act gives courts "broad equitable discretion to craft remedies for violation" of the law, that the "primary purpose of disgorgement orders is to deter violations of securities law," and that "compensation of fraud victims is a secondary goal") (internal quotation marks omitted). This reasoning underscores our alternative recommendation that, if disgorgement and restitution should be treated as equivalent remedies, the receiver should be awarded the commissions because of the primary remedial and deterrent purpose of the relevant statutes. *See id., Cavanagh*, 445 F.3d at 117 (explaining that disgorgement "is not available primarily to compensate victims" and "has the effect of deterring subsequent fraud").

Finally, we also note that the *Bateman* factors are most relevant to a discussion of *in pari delicto*, which is pertinent to an analysis of restitution because plaintiff's fault is to be considered in weighing the equities for a reward under a theory of restitution. Because disgorgement focuses on defendants' wrong-

doing, the degree of fault of plaintiff's conduct is less significant, and therefore the equities of *in pari delicto* are not pertinent to determining appropriate relief.

**13.** Though the receiver does not discuss this issue, we note that, were disgorgement based on a theory of unjust enrichment appropriate here, recovery would not be forestalled by the presence of a contract between the Cobalt entities and the defendants. In general, since unjust enrichment sounds in quasi-contract, it is unavailable when a contract covers the particular matter in question. *See Anwar v. Fairfield Greenwich Ltd.*, 728 F.Supp.2d 372, 421 (S.D.N.Y.2010) ("to the extent that a valid contract governs the transaction between Plaintiffs and any of the Defendants, recovery in unjust enrichment is not allowed"); *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F.Supp.2d 191, 200 (S.D.N.Y.2006) (noting that an enforceable contract can render recovery under a theory of unjust enrichment unavailable). Based on Eisemann's deposition, it appears that he had an express or implied employment contract with Cobalt. (Eisemann Dep., 27) ("Q: Was there any type of employment agreement with Cobalt? A: Yes."); *see also Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir.2006) (stating that implied-in-fact contracts preclude quasi-contract claims). For this discussion, we assume that the other individual defendants also had employment contracts with the Cobalt entities, in

In summary, we suggest that the receiver's motion for summary judgment on unjust enrichment be denied on the basis that the Cobalt principals—and, under the principles of agency law described above, Cobalt—engaged in an unconscionable fraud upon the investing public. Accordingly, the court should decline to exercise its equitable powers in favor of the Cobalt entities.

*CONCLUSION*

For the reasons set forth above, we recommend that the receiver's motion be granted in part and denied in part. We recommend that defendants Eisemann, Landsman, Kagan, and Dundon be ordered to disgorge $39,115.59, $13,425.00, $71,234.45, and $2,223.00, respectively, on the basis that they violated securities laws by selling unregistered securities. We recommend that the remainder of the receiver's motion be denied.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to the Report and Recommendation portion of this submission. *See also* Fed.R.Civ.P. 6(a), 6(d). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Kimba M. Wood, Room 1610, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989); *Thomas v. Arn*, 474 U.S. 140, 150–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).

part because we believe it to be nearly universal for sales agents to enter into employment contracts with their employers.

Any such contract would be void, however, because it contemplated participation in a fraud. *See* 15 U.S.C. § 78cc ("Every contract ... the performance of which involves the violation of, or the continuance of any relationship or practice in violation of [federal securities laws] shall be void ... as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract"). If we believed that granting the receiver's third cause of action was appropriate, we would recommend that any contract between the Cobalt entities and defendants be disregarded.